| | | |
|---|---|---|
| FAIZ SIDDIQUI, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:18-CV-00839 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ERIC ROCHELEAU | : | DECEMBER 10, 2018 |
|     Defendant. | : | |

## RULING RE: MOTION TO DISMISS (DOC. NO. 19)

## I.  INTRODUCTION

Plaintiff Faiz Siddiqui ("Siddiqui"), a citizen and resident of the United Kingdom, brings this action against Connecticut police officer Eric Rocheleau ("Rocheleau") in his individual capacity.  See generally Amended Complaint ("Am. Compl.") (Doc. No. 3). Siddiqui alleges that Rocheleau committed various constitutional and state law violations in connection with his ongoing criminal investigation of Siddiqui for harassment of Erum Majid Randhawa ("Randhawa").  Id.  Rocheleau now moves to dismiss Siddiqui's Amended Complaint in its entirety.  See generally Motion to Dismiss ("Mot. to Dismiss") (Doc. No. 19).

For the reasons set forth below, Rocheleau's Motion to Dismiss is granted.

## II.  BACKGROUND[1]

Siddiqui is a citizen of the United Kingdom and a resident of London.  Am. Compl. at ¶ 3.  Rocheleau is a Connecticut resident and is employed as a police officer

---

[1] For the purposes of deciding this Motion to Dismiss, the court accepts all well-pleaded factual allegations in the Amended Complaint as true and draws all reasonable inferences in Siddiqui's favor. Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).

by the West Hartford Police Department.  Id. at ¶ 4.  Randhawa, the complainant in the underlying criminal case against Siddiqui, is also a Connecticut resident.  Id. at ¶ 6.

In 2006, Siddiqui became acquainted with Randhawa while visiting his aunt in Connecticut.  Id. at ¶ 7.  After Siddiqui returned to London, he attempted to continue the relationship with Randhawa.  Id. at ¶ 8.  However, Randhawa lost interest in Siddiqui in 2007, and the two had no further contact until 2012.  Id.

Some time before 2012, Siddiqui started to suspect that Randhawa had been defaming him.  Id. at ¶ 9.  On the advice of counsel, he emailed Randhawa in August 2012, to express "his dismay at her conduct," but then had no further contact with her until early 2015.  Id.

On January 1, 2015, Siddiqui learned that Randhawa had been viewing his information on the internet.  Id. at ¶ 10.  In response, Siddiqui called Randhawa once, but did not connect with her and did not leave a message.  Id.  At that time, Siddiqui was enrolled in a graduate business school program at Northwestern University in Illinois.  Id.

In March 2015, Randhawa complained to Rocheleau that Siddiqui was harassing her.  Id. at ¶ 11.  In response, Rocheleau visited Siddiqui's aunt and uncle, both of whom lived in Connecticut.  Id. at 12.  Rocheleau threatened that, if they did not provide him with Siddiqui's phone number, "they would be treated as felons and arrested."  Id.  In addition, Rocheleau called the Dean of Siddiqui's business school and falsely stated that Siddiqui was living and working in the United States in violation of his student visa.  Id.  While speaking with Siddiqui's father in May 2015, Rocheleau also represented that Siddiqui would be arrested and internationally extradited to the United States to face

criminal charges on the next occasion that he attempted to travel outside of the United Kingdom.  Id.

On April 24, 2015, Rocheleau applied for a search warrant in Connecticut state court to obtain certain text messages and phone records from Siddiqui's cell phone.  Id. at ¶ 18; see generally Exhibit 1, Am. Compl. ("Search Warrant Application") (Doc. No. 3).  Although the state court issued the search warrant, Rocheleau did not provide Siddiqui with a copy of the warrant, and Siddiqui did not discover that his phone records had been searched and seized until October 30, 2017.  Id. at ¶¶ 20–23.

On May 22, 2015, Rocheleau applied for a warrant for Siddiqui's arrest on a charge of Harassment in the Second Degree in violation of section 53a-183 of the Connecticut General Statutes.  Id. at ¶ 30; see generally Exhibit 2, Am. Compl. ("Arrest Warrant Application") (Doc. No. 3).  The warrant was signed by a state court judge and then "lodged with the United States Department of Homeland Security."  Id. at ¶ 31. Due to this outstanding arrest warrant, Siddiqui has not traveled to the United States for the past three years and, as a result, has not completed his graduate business program at Northwestern University.  Id. at ¶¶ 32, 33.

On May 18, 2018, Siddiqui filed this action against Rocheleau.  See generally Complaint ("Compl.") (Doc. No. 1).  In his Amended Complaint, Siddiqui asserts federal claims for violations of (1) his right of access to the courts under the First Amendment, Am. Compl. at ¶ 24; (2) his right to be free of unreasonable searches and seizures under the Fourth Amendment, id. at ¶ 26; (3) his right to travel under the First, Fourth, and Fourteenth Amendments, id. at ¶ 32; (4) his right to be free of false arrest and imprisonment under the Fourth Amendment, id. at ¶ 35; (5) his right to substantive due

process under the Fourteenth Amendment, id. at ¶ 37; and (6) his right to engage in protected speech under the First Amendment, id. at ¶ 40.  Siddiqui also asserts various state law claims, including for intentional infliction of emotional distress.  Id. at ¶ 44.

On July 9, 2018, Rocheleau filed a Motion to Dismiss all claims alleged in the Amended Complaint.  See generally Mot. to Dismiss.  Rocheleau moves to dismiss Siddiqui's right to travel claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.  See Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem.") (Doc. No. 19-1) at 5.  Rocheleau moves to dismiss Siddiqui's remaining claims under Rule 12(b)(6) for failure to state a claim. See id.

### III.    STANDARD OF REVIEW

#### A.    Rule 12(b)(1) Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving the existence of subject matter jurisdiction.  Id.  In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  Carter v. Healthport Techs., LLC, 882 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

#### B.    Rule 12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a).  To survive a motion to dismiss for failure to state a claim under Rule

4

12(b)(6), that plain statement must allege facts sufficient to state a plausible claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While this plausibility standard does not require probability, it is not satisfied by "a sheer possibility that a defendant has acted unlawfully" or by facts that are "merely consistent with a defendant's liability." Id. (internal quotation marks omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the court must accept all material factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). In those instances, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "[O]nly the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken" may be considered by the court. Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## IV. DISCUSSION

Rocheleau seeks to dismiss all of Siddiqui's claims. See Mot. to Dismiss at 1. To begin, Rocheleau argues that the court should abstain from exercising jurisdiction over the Amended Complaint under the Younger abstention doctrine. See Def.'s Mem. at 2. If the court determines that abstention is not warranted, Rocheleau argues that the court lacks subject matter jurisdiction over Siddiqui's right to travel claim because it is

unripe, and that Rocheleau's remaining causes of action fail to state a claim upon which relief may be granted.  See id. at 2–3.  The court addresses each of these arguments in turn, starting with the issue of abstention.

A.    Abstention

Rocheleau argues that, under Younger v. Harris, 401 U.S. 37 (1971), the court should abstain and dismiss Siddiqui's Amended Complaint because the suit interferes with an ongoing state criminal proceeding, namely, the execution of a pending, state court warrant for Siddiqui's arrest.  See Def.'s Mem. at 7–10.  Specifically, Rocheleau argues that Siddiqui is using federal court to mount an improper, collateral attack on the validity of his arrest and search warrants.  See id. at 8–9.  Rocheleau contends that, if Siddiqui wishes to challenge the lawfulness of these warrants, he should surrender himself to Connecticut authorities and raise these challenges during the ensuing state court criminal proceeding.  See id. at 9.

Under the Younger abstention doctrine, federal courts should generally refrain from exercising jurisdiction over federal claims that "involve or call into question ongoing state proceedings."  Diamond "D" Const. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002).  This doctrine, which is rooted in the principles of comity and federalism, "serves the vital purpose of reaffirming the competence of the state courts, and acknowledging the dignity of states as co-equal sovereigns in our federal system."  Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 74–75 (2d Cir. 2003) (internal quotation marks and alterations omitted).

In this Circuit, application of Younger abstention depends on the nature of the remedy being sought.  While Younger abstention may apply to suits for injunctive or declaratory relief, the Supreme Court has not decided whether it applies to claims for

damages.  See Kirschner v. Klemons, 225 F.3d 227, 238 (2d Cir. 2000).  However, the

Second Circuit has reasoned that, "[w]hen money damages, as opposed to equitable

relief, are sought, it is less likely that unacceptable interference with the ongoing state

proceeding, the evil against which Younger seeks to guard, would result from the

federal court's exercise of jurisdiction."  Id.  Accordingly, the Second Circuit has held

that "abstention and dismissal are inappropriate when damages are sought, even when

a pending state proceeding raises identical issues and [the court] would dismiss

otherwise identical claims for declaratory and injunctive relief, but that a stay of the

action pending resolution of the state proceeding may be appropriate."  Id.

In this case, Siddiqui's Amended Complaint seeks "compensatory damages,

punitive damages, attorney fees, costs, and such equitable relief as this court may

deem to be fair and just."  Am. Compl. at ¶ 44.  However, when arguing against the

application of Younger abstention to his case, Siddiqui represents in his Opposition brief

that he is "not seeking injunctive relief," but is instead "seek[ing] money damages for

wrongdoing which already has taken place and to compensate him for injuries already

suffered as a result of that wrongdoing."  Plaintiff's Brief in Opposition to Motion to

Dismiss ("Pl.'s Mem.") (Doc. No. 20) at 8.  In light of these representations and the

Amended Complaint's failure to specify the form of equitable relief being sought, the

court treats Siddiqui's suit as an action for damages only.  See Nwachukwu v.

Connecticut Dep't of Labor, No. 3:13-CV-1539 JCH, 2014 WL 6633050, at *1 n.1 (D.

Conn. Nov. 20, 2014) (treating plaintiff's suit as a damages suit when the plaintiff did not

argue otherwise and the only equitable remedy requested in the complaint was for

"[s]uch further and equitable relief as the Court may deem appropriate"). Accordingly, <u>Younger</u> abstention is not an appropriate basis for dismissing Siddiqui's claims.[2]

Although the Second Circuit has suggested that district courts have the power to stay damages suits based on <u>Younger</u> abstention principles, <u>see</u> <u>Kirschner</u>, 225 F.3d at 238, it has also recognized that "[t]he decision as to whether to stay a federal action on the ground that there is a related action pending in a state court is committed to the sound discretion of the district court," <u>United States v. Pikna</u>, 880 F.2d 1578, 1582 (2d Cir. 1989). The court need not decide the propriety of issuing a stay in this case. In this case, neither party has argued for a stay. Moreover, there are grounds for dismissing Siddiqui's claims which, as discussed below, avoid unduly infringing upon the state criminal proceedings against Siddiqui. <u>See</u> <u>Mancuso v. Dunbar</u>, No. 3:08-CV-1018VLB, 2010 WL 466004, at *5 (D. Conn. Feb. 5, 2010) (declining to decide whether a stay would be appropriate on the basis of abstention principles when plaintiff's claims for money damages could be dismissed on other grounds). The court will therefore consider the merits of Siddiqui's claims.

B.    <u>Right to Travel</u>

Siddiqui asserts that the pending arrest warrant has deprived him of his constitutional right to travel to and within the United States. Am. Compl. at ¶¶ 31, 32. In response, Rocheleau argues that Siddiqui's right to travel claim is not ripe because Siddiqui has not suffered an injury in fact. <u>See</u> Def.'s Mem. at 10. As a result,

---

[2] To the extent that Siddiqui seeks equitable relief, that claim is dismissed as abandoned in light of the representations that he made in his Opposition brief. <u>See</u> <u>Moccio v. Cornell Univ.</u>, No. 09 CIV. 3601 (GEL), 2009 WL 2176626, at *4 (S.D.N.Y. July 21, 2009) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."), <u>aff'd</u>, 526 F. App'x 124 (2d Cir. 2013).

Rocheleau contends, the court lacks subject matter jurisdiction over this claim.  Id. Rocheleau also argues that the claim should be dismissed on its merits because Siddiqui has not plausibly pled a violation of his constitutional right to travel.  Id. at 5.

The issue of "[r]ipeness is peculiarly a question of timing."  Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 687 (2d Cir. 2013) (internal quotation marks omitted).  When a claim "depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all," the claim is deemed unripe and therefore not justiciable.  Id. (internal quotation marks omitted).  More precisely, the ripeness doctrine imposes "two overlapping threshold criteria for the exercise of a federal court's jurisdiction," both of which concern the issue of "whether a case has been brought prematurely."  In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 725 F.3d 65, 109, 110 (2d Cir. 2013).

The first requirement of constitutional ripeness arises from Article III limitations on judicial power, and it "prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur."  Id. at 110.  The Second Circuit has described constitutional ripeness as "a specific application of the actual injury aspect of Article III standing."  Nat'l Org. for Marriage, 714 F.3d at 688.  Thus, a plaintiff's claim is constitutionally ripe when it alleges "an invasion of a legally protected interest" that is "actual or imminent," rather than "conjectural or hypothetical."  Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)).

The second requirement of prudential ripeness is "drawn from prudential reasons for refusing to exercise jurisdiction."  In re MTBE Prod. Liab. Litig., 725 F.3d at 110.

Unlike constitutional ripeness, prudential ripeness does not concern whether the case is "a real or concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III." Simmonds v. I.N.S., 326 F.3d 351, 357 (2d Cir. 2003). Instead, it is "an important exception" to the exercise of jurisdiction that exists when "the case will be better decided later and [when] the parties will not have constitutional rights undermined by the delay." Id. (emphasis in original). Thus, prudential ripeness is a "tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary[.]" Id. To determine whether to abstain from a case on prudential ripeness grounds, courts in this Circuit engage in a "two-step inquiry" that requires evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." New York Civil Liberties Union v. Grandeau, 528 F.3d 122, 131–32 (2d Cir. 2008). Under the fitness prong, the court must determine "whether the issues sought to be adjudicated are contingent on future events or may never occur." Id. at 132. Under the hardship prong, the court must assess whether "the challenged action creates a direct and immediate dilemma for the parties." Id. at 134.

In this case, Siddiqui's right of travel claim is both constitutionally and prudentially ripe because Siddiqui alleges that the invasion of this right occurred in the past. See Pl.'s Mem. at 9. Specifically, the Amended Complaint asserts that, as a result of the arrest warrant being "lodged with the United States Department of Homeland Security," Siddiqui has been "deprived of his right to travel to and within the United States for the past three years." Am. Compl. at ¶¶ 31–32. Siddiqui further alleges that he has suffered "substantial loss of income as a result of his inability to

return to the United States to complete his graduate school education at Northwestern University." Id. at ¶ 33. Thus, Siddiqui's claim does not depend upon contingent future events that may never occur. Instead, the alleged invasion of a legally protected interest, i.e., Siddiqui's constitutional right to travel, has already occurred. Thus, Siddiqui's right to travel claim presents a concrete dispute within the meaning of Article III, and there would be no benefit to delaying review of this cause of action. The court therefore has jurisdiction to consider the merits of this claim.

A necessary precondition of Siddiqui's right to travel claim is that he has a right to enter the United States.[3] If Siddiqui, a citizen of the United Kingdom who presently resides in London, does not have a constitutional right to enter the United States, then logically he cannot have a constitutional right to travel within the United States. Whether Siddiqui has a constitutionally protected right to enter the United States depends, in turn, on his immigration status.

It is well established that "an unadmitted and nonresident alien [ ] ha[s] no constitutional right of entry to this country[.]" Kleindienst v. Mandel, 408 U.S. 753, 762 (1972); see also Trump v. Hawaii, 138 S. Ct. 2392, 2419 (2018) ("[F]oreign nationals seeking admission have no constitutional right to entry."). As the Supreme Court has explained, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." Landon v. Plasencia, 459 U.S. 21, 32 (1982). By contrast, a lawfully resident alien who voluntarily leaves the United States

---

[3] The court notes that Siddiqui has not alleged violations to his right to travel internationally, which is distinguishable from the right to travel within the United States. See Karpova v. Snow, 402 F. Supp. 2d 459, 471–72 (S.D.N.Y. 2005), aff'd, 497 F.3d 262 (2d Cir. 2007).

may, in certain circumstances, be entitled to due process before he can be denied permission to reenter this country.  See id. at 34–35 (holding that a resident alien who left the United States for a few days was constitutionally entitled to a due process hearing when the government sought to prevent his reentry to the country).

In this case, Siddiqui has alleged no facts concerning his immigration status during the alleged deprivation of his constitutional right to travel.  Although Siddiqui indicates that he had an "F1 student visa" at some point in time, Am. Compl. at ¶ 12, he does not allege that he possessed that visa at the time of the alleged constitutional violation.  Courts, however, look to the foreigner's immigration status at the time of the denial of entry when determining whether the denial implicates the foreigner's constitutional rights.  See Kleindienst v. Mandel, 408 U.S. 753, 756, 762 (1972) (holding that an unadmitted and nonresident alien did not have a constitutional right of entry to the United States, notwithstanding his prior lawful admissions to this country); Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 213 (1953) ("For purposes of the immigration laws, [ ] the legal incidents of an alien's entry remain unaltered whether he has been here once before or not.").  Furthermore, even if Siddiqui possessed a student visa at the time of the alleged constitutional violation, the court notes that existing case law raises doubts as to whether possession of a student visa alone would entitle Siddiqui to due process protections.  See, e.g., Rahman v. McElroy, 884 F. Supp. 782, 786 (S.D.N.Y. 1995) ("[E]ven revocation of an entry visa issued to an alien already within the country has no effect upon the alien's liberty or property interests.") (quoting Knoetze v. U.S., Dep't of State, 634 F.2d 207, 212 (5th Cir. 1981)) (internal quotation marks and alterations omitted); Am. Immigration Lawyers Ass'n v.

<u>Reno</u>, 18 F. Supp. 2d 38, 45, 59–60 (D.D.C. 1998) (holding that the plaintiffs did not have due process rights with respect to their admission into the United States, even though they possessed valid tourist visas), <u>aff'd</u>, 199 F.3d 1352 (D.C. Cir. 2000). The court, however, need not reach this issue because Siddiqui has not alleged that he possessed a valid visa when he was allegedly deprived of his constitutional right to travel. Accordingly, Siddiqui's right to travel claim is dismissed for failure to state a plausible cause of action.

C.     <u>Unreasonable Search & Seizure</u>

Siddiqui argues that Rocheleau's search and seizure of his phone records was unlawful because (1) Rocheleau failed to provide him with a timely copy of the search warrant, as ordered by the state court; and (2) Rocheleau's application for a search warrant withheld "exculpatory information" that, if included, would have caused the state court judge to decline to issue a search warrant for Siddiqui's phone. Pl.'s Mem. at 11–12. The court will address each of these alleged Fourth Amendment violations in turn.

1.     Failure to Disclose Search Warrant

Pursuant to section 54-33c of the Connecticut General Statutes, a copy of a search warrant application must be given to the person named on the warrant within forty-eight hours of the search. Conn. Gen. Stat. Ann. § 54-33c(b). However, a judge "may, by order, dispense with the requirement of giving a copy of the affidavits to [such a person] at such time[.]" Conn. Gen. Stat. Ann. § 54-33c(b). In his Amended Complaint, Siddiqui alleges that Rocheleau asked a state court judge for permission to delay disclosing the search warrant to Siddiqui. Am. Compl. at ¶ 21. Although the judge denied this request, Rocheleau allegedly concealed the search warrant from Siddiqui for more than two years. <u>See</u> <u>id.</u> at ¶ 23.

However, searches and seizures that violate state law do not necessarily violate the Fourth Amendment.  While "police enforcement practices . . . vary from place to place and from time to time," the Supreme Court has held that "the search and seizure protections of the Fourth Amendment are [not] so variable, and [cannot] be made to turn upon such trivialities."  <u>Whren v. United States</u>, 517 U.S. 806, 815 (1996) (internal citations omitted).  Thus, while "[a] State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options," <u>Virginia v. Moore</u>, 553 U.S. 164, 174 (2008), "state restrictions do not alter the Fourth Amendment's protections," <u>id.</u> at 176.  Accordingly, the Second Circuit has held that "the Fourth Amendment does not incorporate state <u>procedural</u> criminal law," and that "the violation of [state] restrictions will not generally affect the constitutionality of a seizure supported by probable cause."  <u>United States v. Bernacet</u>, 724 F.3d 269, 277 (2d Cir. 2013) (emphasis in original).  Instead, "the touchstone of a federal court's review of a state search warrant secured by local police officials . . . is the Fourth Amendment and its requirements, and no more."  <u>United States v. Smith</u>, 9 F.3d 1007, 1014 (2d Cir. 1993).

In this case, Siddiqui's allegations of Rocheleau's failure to timely disclose the search warrant merely state a violation of Connecticut law, not of the Fourth Amendment.[4]  Siddiqui does not point to any authority suggesting that the Fourth Amendment requires disclosure of a search warrant, and the court's independent review of the case law has not identified any such requirement.  Accordingly, these allegations

---

[4] Indeed, Siddiqui appears to concede this point in his Opposition brief when he notes that "[t]he defendant persuasively argues that, as a matter of law, the defendant's violation of the court's express command to disclose the warrant and its fruits to the plaintiff within not less than two weeks does not of itself render his search and seizure unreasonable under Fourth Amendment law."  Pl.'s Mem. at 11.

do not plausibly state a Fourth Amendment violation.  See Stanley v. Taylor, No. 3:15-CV-1722-VLB, 2016 WL 1408078, at *3 (D. Conn. Apr. 8, 2016) (holding that violations of section 54-33c of the Connecticut General Statutes do not support a constitutional claim of unlawful search and seizure), appeal dismissed, No. 16-1171, 2016 WL 11113639 (2d Cir. Oct. 25, 2016).

### 2. Omission of Exculpatory Evidence

Siddiqui also argues that Rocheleau's search and seizure of his phone records was unlawful because Rocheleau omitted exculpatory information from his application for the search warrant.  See Pl.'s Mem. at 11–12.  Siddiqui asserts that the search warrant would not have issued if the state judge had been aware of this information. See id.

Ordinarily, "the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden."  Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991) (internal citations omitted).  However, under the Franks doctrine,[5] "[a] plaintiff can demonstrate that her right not to be searched absent a search warrant supported by probable cause was violated where [1] the officer submitting the probable cause affidavit knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted

---

[5] While the Franks doctrine arose in the context of criminal cases, the doctrine has been extended to Fourth Amendment claims in civil suits.  See Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994); Calderon v. City of New York, No. 14 CIV. 1082 PAE, 2015 WL 2079405, at *5 (S.D.N.Y. May 4, 2015 )

material information, and [2] that such false or omitted information was necessary to the finding of probable cause." McColley v. Cty. of Rensselaer, 740 F.3d 817, 823 (2d Cir. 2014) (internal quotation marks omitted).

With respect to the first element, the plaintiff must allege that such omissions "are designed to mislead, or [ ] are made in reckless disregard of whether they would mislead, the magistrate." United States v. Awadallah, 349 F.3d 42, 68 (2d Cir. 2003) (quoting United States v. Colkley, 899 F.2d 297, 300–01 (4th Cir.1990)) (emphasis in original). While recklessness may be inferred when information omitted from an affidavit was "clearly critical" to the determination of probable cause, McColley, 740 F.3d at 823, "misstatements or omissions caused by negligence or innocent mistakes" do not state a plausible claim under the Franks doctrine, United States v. Rajaratnam, 719 F.3d 139, 153 (2d Cir. 2013) (internal quotation marks and alterations omitted). Likewise, allegations of "mere intent to exclude information [are] insufficient." Awadallah, 349 F.3d at 67. The Second Circuit has further stressed that "[u]nsupported conclusory allegations of falsehood or material omission" cannot support a challenge to the validity of a warrant. Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994). Rather, Franks requires the plaintiff to make "specific allegations." Id.

With respect to the second element of a Franks claim, courts in this Circuit use a "corrected affidavit" analysis to determine whether the omitted information was necessary to the magistrate's finding of probable cause. McColley, 740 F.3d at 823. In conducting this analysis, courts "look to the hypothetical contents of a 'corrected' application to determine whether a proper warrant application, based on existing facts known to the applicant, would still have been sufficient to support arguable probable

cause[.]" Id. (quoting Escalera v. Lunn, 361 F.3d 737, 743–44 (2d Cir. 2004)). While "the law does not demand that an officer applying for a warrant volunteer every fact that arguably cuts against the existence of probable cause," the officer must "not omit circumstances that are critical to its evaluation." Id. (internal quotation marks omitted). "The ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." Awadallah, 349 F.3d at 65 (internal quotation marks omitted).

In this case, Siddiqui fails to state a Fourth Amendment claim under the Franks doctrine. The Amended Complaint only alleges that "[Rocheleau] withheld exculpatory information from his application which would have caused [the state court judge] to decline to issue the warrant had she known of it." Am. Compl. at ¶ 18. Siddiqui does not specify the nature or contents of this exculpatory information. Because Siddiqui does not identify what material should have been added to Rocheleau's search warrant application, it is impossible for the court to conduct a corrected affidavit analysis. Furthermore, Siddiqui does not allege any facts suggesting that Rocheleau acted knowingly and intentionally when he omitted this information, nor are there any allegations in the Amended Complaint from which to infer that these omissions were clearly critical to the determination of probable cause. Accordingly, Siddiqui's conclusory allegations fail to satisfy either element of the Franks test, and his Fourth Amendment claim for unreasonable search and seizure is dismissed.

D.    Access to Courts

Siddiqui alleges that Rocheleau violated his First Amendment right of access to the courts by concealing the existence of the search warrant from Siddiqui for more than two years. See Am. Compl. at ¶¶ 18–24. In doing so, Rocheleau allegedly delayed

17

Siddiqui from bringing claims against Rocheleau for the invasion of his privacy caused by Rocheleau's search and seizure of Siddiqui's phone records. See id.

To plead a violation of a right of access to the courts, a plaintiff must plausibly allege that a defendant caused "actual injury," that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis v. Casey, 518 U.S. 343, 348 (1996). As the Supreme Court has explained, the right of access to the courts is not a "freestanding right," id. at 351, but rather is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court," Christopher v. Harbury, 536 U.S. 403, 415 (2002). Thus, the plaintiff must allege facts demonstrating not only that a defendant interfered with his access to the courts, but also that "such conduct materially prejudiced a legal action he sought to pursue." Covino v. Reopel, 108 F.3d 1369, 1997 WL 138856, at *1 (2d Cir. 1997) (quoting Smith v. O'Connor, 901 F.Supp. 644, 649 (S.D.N.Y. 1995) (Sotomayor, J.).

In this case, Siddiqui's pleadings do not satisfy the actual injury requirement for an access to courts claim. While the concealment of the search warrant may have delayed Siddiqui from bringing his claims for unconstitutional search and seizure, Siddiqui has not alleged facts suggesting that this delay has prejudiced his claims in any way. Notably, the two-year delay has not prevented Siddiqui from bringing privacy invasion claims against Rocheleau, as evidenced by Siddiqui's filing of the instant suit in this court. See Gittens v. Sullivan, 848 F.2d 389, 390 (2d Cir.1988) (noting that the plaintiff's filings in the instant suit were indicative that the plaintiff had meaningful access to the courts). Nor does the Amended Complaint suggest that the delay has impaired

Siddiqui's ability to present the claims that he has brought against Rocheleau. Instead, Siddiqui has alleged "mere delays without any resulting prejudice," and courts in this Circuit have routinely concluded that such allegations "do not rise to the level of a constitutional violation." Sheppard v. Lee, No. 10 CIV. 6696 GBD JLC, 2011 WL 6399516, at *2 (S.D.N.Y. Dec. 20, 2011) (quoting Henry v. Annetts, No, 08 Civ. 286(LAP), 2010 WL 3220332, at *3 (S.D.N.Y. 2010)); see also Zigmund v. Solnit, 165 F.3d 16, 1998 WL 769747, at *1 (2d Cir. 1998) ("A two-week delay without further consequences is de minimis and does not satisfy the actual injury requirement."). Accordingly, Siddiqui's access to court claim is dismissed for failure to plausibly allege actual injury to a meritorious claim.

E.    False Arrest & Imprisonment

The Amended Complaint asserts claims for false arrest and imprisonment under the Fourth Amendment. See Am. Compl. at ¶¶ 34–35. It specifically alleges that the issuance of the arrest warrant unlawfully deprived Siddiqui of his liberty because Siddiqui faces immediate arrest and imprisonment should he return to the United States. Id. at ¶ 35. In his Opposition brief, however, Siddiqui abandons his Fourth Amendment claim for false arrest and imprisonment. See Pl.'s Mem. at 12–14. In particular, he accepts Rocheleau's argument that the Amended Complaint does not plausibly allege two elements of a Fourth Amendment claim for false arrest and imprisonment, namely: (1) favorable termination of the underlying criminal prosecution, and (2) deprivation of liberty that is cognizable under the Fourth Amendment. See id. at 12. Siddiqui represents that, "while the Fourth Amendment claim asserted in Count Four may be dismissed, the motion to dismiss must be denied as to the plaintiff's state law false imprisonment claim and also should be denied regarding his state law false

arrest claim." <u>Id.</u> at 14.  In light of these representations, Siddiqui's Fourth Amendment claim for false arrest and imprisonment is deemed abandoned, and dismissal of that claim is therefore warranted.  <u>See</u> <u>Brandon v. City of New York</u>, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases that dismissed plaintiffs' claims on the grounds of abandonment for failure to address defendants' arguments).

Even if Siddiqui had not abandoned his Fourth Amendment claim for false arrest and imprisonment, dismissal would still be warranted for the following reasons.  First, a plaintiff may only bring a claim of false arrest or imprisonment when he has suffered a deprivation of liberty prior to the issuance of legal process, such as when the plaintiff was subjected to a warrantless arrest.  <u>See</u> <u>Singer v. Fulton Cty. Sheriff</u>, 63 F.3d 110, 116–17 (2d Cir. 1995).  Where the deprivation of liberty has been effected pursuant to legal process, such as an arrest made pursuant to a warrant, the proper cause of action is one for malicious prosecution.  <u>See</u> <u>id.</u> at 117; <u>see also</u> <u>Wright v. Stephens</u>, No. 3:17-CV-01499 (MPS), 2018 WL 3241352, at *2 (D. Conn. July 3, 2018) ("For a plaintiff to allege a cause of action for malicious prosecution under § 1983, the plaintiff must show a deprivation of liberty pursuant to legal process – meaning either post-arraignment or as a result of arrest pursuant to warrant.  Deprivations of liberty from the moment of warrantless arrest until arraignment are not pursuant to legal process, and therefore implicate the separate tort of false arrest.") (internal quotation marks and alterations omitted).  Here, Siddiqui's alleged deprivation of liberty occurred pursuant to legal process because it occurred as a result of the issuance of a warrant for his arrest.  <u>See</u> Am. Compl. at ¶ 35.  Therefore, Siddiqui has failed to plausibly allege a claim for false arrest and imprisonment under the Fourth Amendment.

Moreover, even if the court treats Siddiqui's claim as one for malicious prosecution, the Amended Complaint fails to plausibly allege the requisite elements. As the Second Circuit has explained, "the merits of a claim for malicious prosecution under Section 1983 are governed by state law." Spak v. Phillips, 857 F.3d 458, 461 (2d Cir. 2017). Under Connecticut law, a plaintiff asserting malicious prosecution must prove, inter alia, that "the criminal proceedings have terminated in favor of the plaintiff." Id. at 462 n.1 (internal quotation marks omitted). In light of the pending warrant for Siddiqui's arrest, it is undisputed that the criminal proceedings against Siddiqui have not terminated, much less terminated in Siddiqui's favor. Accordingly, the Amended Complaint also fails to allege facts that plausibly support a malicious prosecution claim under the Fourth Amendment.

For the above reasons, Siddiqui's Fourth Amendment claim for false arrest and imprisonment is dismissed.

F.    Freedom of Speech

Siddiqui argues that Rocheleau violated his First Amendment right to free speech by falsely representing in the arrest warrant application that "[Siddiqui] had made three telephone calls to [Randhawa's] employers, describing [Randhawa] in pejorative terms and questioning her suitability for her employment position." Am. Compl. at ¶ 39. In the Amended Complaint, however, Siddiqui also "unequivocally denies making any of these phone calls." Id. at ¶ 40. The court is troubled by Siddiqui's attempt to base his First Amendment claim on speech that he denies ever occurred. However, even if the court were to assume that Siddiqui had made the three calls to Randhawa's workplace, his First Amendment claim would fail as a matter of law.

Siddiqui appears to argue that, because these calls constitute protected speech, the state may not use them as a basis for prosecuting him for harassment under section 53a-183 of the Connecticut General Statutes.  See id. at ¶¶ 39–40; Pl.'s Mem. at 16–17. In response, Rocheleau argues that these calls were evidence of Siddiqui's intent to harass Randhawa, and they therefore could be included in the arrest warrant application without violating the First Amendment.  See Def.'s Mem. at 23–25.

Section 53a-183(a) provides in relevant part:

> A person is guilty of harassment in the second degree when . . . (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network, as defined in section 53a-250, or by any other form of written communication, in a manner likely to cause annoyance or alarm; or (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm.

Prosecution under section 53a-183 violates the First Amendment when it is based on the content of protected speech, rather than on the manner in which it is spoken.  See State v. Moulton, 310 Conn. 337, 352–356, 362–363 (2013); see also State v. Nowacki, 155 Conn. App. 758, 782 (2015). However, as the Second Circuit has explained, the state may rely on the content of a communication to establish the defendant's intent to harass without infringing on First Amendment protections.  See Gormley v. Dir., Connecticut State Dep't of Prob., 632 F.2d 938, 943 (2d Cir. 1980) ("[T]he trial court's instruction to the jury to consider the language used by appellant in the course of the telephone call not only was permissible; it was indispensable to a proper determination of whether the statutory requirement of 'intent to harass' had been proven.").  In other words, the factfinder in a harassment case, brought pursuant to section 53a-183, is "entitled to consider the language used during the course of the telephone call, but

22

solely for the purpose of determining whether the state had established the element of intent." Moulton, 310 Conn. at 353 (citing Gormley, 632 F.2d at 943).

In this case, the Amended Complaint provides no plausible basis for reasonably concluding that the state's criminal prosecution of Siddiqui was impermissibly based on the content of the phone calls made to Randhawa's place of employment. Siddiqui does not dispute Rocheleau's claim that the language used in these phone calls provides evidence that the calls were made with the intent to harass Randhawa. See Def.'s Mem. at 24. Instead, Siddiqui argues that the calls cannot be used as evidence against him because they were made to third parties (i.e., Randhawa's employers), rather than to Randhawa herself. See Pl.'s Mem. at 17. However, "[a] defendant need not engage in direct communication with the person whom he or she intended to harass" in order to violate section 53a-183. State v. Buhl, 321 Conn. 688, 719 (2016) (internal quotation marks and alterations omitted). Accordingly, the Connecticut Supreme Court has recognized that a defendant's communications with parties other than the complainant may serve as evidence of his intent to harass the complainant. See id. at 721 (noting that the defendant's communications with the victim's parents "could reasonably evince the intent to harass, annoy, or alarm" the victim). Thus, the fact that the three phone calls were made to Randhawa's employers, rather than to Randhawa herself, does not render Rocheleau's use of these calls unconstitutional.

Furthermore, the arrest warrant application provides a basis for concluding that the state's prosecution of Siddiqui was based on his harassing conduct, rather than on the content of his communications. Notwithstanding Siddiqui's claim that his arrest warrant was obtained "in large part" on the three phone calls made to Randhawa's

employers, Am. Compl. at ¶ 39, the arrest warrant application contains numerous allegations relating to the harassing manner in which Siddiqui communicated with Randhawa. For example, the application alleges that Randhawa received more than nine calls from blocked or disguised numbers that she believed were from Siddiqui. See Arrest Warrant Application at ¶¶ 4, 9; see also State v. Reed, 176 Conn. App. 537, 552 (2017) ("Typically, telephone harassment involves multiple telephone calls or calls placed at inconvenient locations or hours."). Moreover, some of Siddiqui's alleged communications were placed at inconvenient locations or hours, such as the calls to Randhawa's place of employment and a lengthy email that Siddiqui sent to Randhawa and her family during the week of Randhawa's wedding. See Arrest Application Warrant at ¶¶ 5, 7–9; see also Gormley, 632 F.2d at 940–41 (denying habeas petition from appellant convicted of telephone harassment for calling complainant's workplace to harass her). As a result, Siddiqui has not pled factual allegations that support a reasonable inference that the warrant for his arrest violates his First Amendment rights.

For the aforementioned reasons, Siddiqui's free speech claim is dismissed.

G.    Substantive Due Process

Siddiqui also claims that Rocheleau's conduct violated his right to substantive due process under the Fourteenth Amendment. Am. Compl. at ¶ 37.

To survive a Rule 12(b)(6) motion, a substantive due process claim "must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (internal quotation marks omitted). Because "[s]ubstantive due process is an outer limit on the legitimacy of governmental action[,] . . . [s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse

of governmental authority." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999). Thus, while the Second Circuit has noted that "malicious and sadistic" government action that is "designed for no legitimate government purpose[ ] unquestionably shock[s] the conscience," Velez, 401 F.3d at 94 (internal quotation marks omitted), it has also cautioned that the protections of due process are not implicated by state conduct that "merely offend[s] some fastidious squeamishness or private sentimentalism," Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir.2002). Instead, the state action must "fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." Id. (internal quotation marks omitted). The Supreme Court has further cautioned against expanding the concept of substantive due process, noting that "the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Albright v. Oliver, 510 U.S. 266, 271–72 (1994). Accordingly, "where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." Kia P. v. McIntyre, 235 F.3d 749, 757–58 (2d Cir. 2000) (internal quotation marks and alterations omitted).

In this case, Siddiqui argues that "all of [Rocheleau's] actions, taken as a whole, violated [his] Fourteenth Amendment right to substantive due process." Pl.'s Mem. at 14. However, to the extent that Siddiqui's substantive due process claim rests on the issuance of the arrest warrant or the search of his phone, it is dismissed because it is subsumed by his more particularized claims for violations of his rights to travel, to access courts, and to be free of search and seizure, which this court has already

addressed.  See, supra, at 8–21.   Likewise, to the extent that Siddiqui's substantive

due process claim is based on the alleged phone calls made to Randhawa's workplace,

it is dismissed because it is subsumed by Siddiqui's free speech claim, which the court

also addressed above.  See, supra, at 21–24.

While acknowledging that portions of his substantive due process claim have

redress under other constitutional provisions, see Pl.'s Mem. at 15, Siddiqui suggests

that some of Rocheleau's unlawful conduct falls outside the scope of any explicit textual

sources of constitutional protection, see id. at 15–16.  Siddiqui highlights, in particular,

his allegations that Rocheleau (1) harassed his family members by threatening arrest if

they did not divulge Siddiqui's phone number; (2) provided false information to the

Siddiqui's business school about his immigration status; and (3) withheld exculpatory

information from state court judges, as well as disobeyed state court orders.  See id. at

16; Am. Compl. at ¶ 12.

Turning first to Rocheleau's threats to arrest Siddiqui's family members, the court

notes that these verbal threats were in service of a legitimate governmental objective,

namely, acquiring Siddiqui's phone number in order to investigate Randhawa's

complaints of harassment.  While Rocheleau's interview of Siddiqui's family members

may have been coercive, "investigatory conduct that includes coercive techniques does

not offend substantive due process absent particularly egregious circumstances."

Rhodes v. Tevens, No. 07-CV-471S, 2012 WL 777421, at *12 (W.D.N.Y. Mar. 7, 2012),

aff'd sub nom. Rhodes v. United States, 519 F. App'x 703 (2d Cir. 2013).  Notably

absent from Siddiqui's Amended Complaint are allegations that Rocheleau used

physical force when conducting his interview of Siddiqui's family.  Velez, 401 F.3d at 93

("We tend to speak of that which 'shocks the conscience' largely in the context of excessive force claims.").  Instead, Siddiqui only alleges that Rocheleau made verbal threats to Siddiqui's family, and district courts in this Circuit have routinely held that verbal abuse alone does not normally satisfy the shock the conscience standard.  See, e.g., Longmoor v. Nilsen, 285 F. Supp. 2d 132, 139 (D. Conn. 2003).

For similar reasons, Rocheleau's false statements to Siddiqui's business school about Siddiqui's immigration status do not rise to the level of a substantive due process violation.  While such statements may have jeopardized Siddiqui's student visa status, they are not, by themselves, "so brutal and offensive to human dignity as to shock the conscience."  See Roman v. Velleca, No. 3:11CV1867 VLB, 2012 WL 4445475, at *11 (D. Conn. Sept. 25, 2012) (dismissing substantive due process claim against defendant who "fabricated incidents of misconduct in order to impugn the [p]laintiff's reputation, causing him to be reprimanded in writing, transferred, and suspended.").

Finally, Siddiqui's allegations that Rocheleau withheld exculpatory evidence and disobeyed orders from state court judges do not plausibly support a substantive due process claim because they are subsumed by Rocheleau's Fourth Amendment claim for unreasonable searches and seizures.  Moreover, even if the court were to ignore the duplicative nature of these alleged constitutional violations, this conduct does not "constitute the kind of heinous behavior recognized in the law as 'conscious shocking.'" Cusick v. City of New Haven, 145 F. App'x 701, 703 (2d Cir. 2005).  Government conduct does not violate substantive due process simply because it violates state law. See Natale, 170 F.3d at 262 (holding that "[a]rbitrary conduct that might violate zoning regulations as a matter of state law is not sufficient to demonstrate conduct so

outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause"). Nor does an officer's withholding of exculpatory evidence necessarily shock the conscious. <u>Kozey v. Quarles</u>, No. 3:04 CV 1724 MRK, 2005 WL 2387708, at *6 (D. Conn. Sept. 28, 2005) (dismissing substantive due process claim that alleged failures to report exculpatory information to the state court), <u>aff'd</u>, 252 F. App'x 387 (2d Cir. 2007); <u>Watson v. Grady</u>, No. 09-CV-3055 KMK, 2010 WL 3835047, at *23 (S.D.N.Y. Sept. 30, 2010) (dismissing substantive due process claim that vaguely alleged that defendants hid exculpatory evidence and gave prosecutors false information regarding plaintiff's involvement in criminal activity). Where, as here, the plaintiff challenges the actions of an executive official, the Supreme Court has cautioned that "only the most egregious official conduct violates" a party's substantive due process rights, the reason being that "executive action challenges raise a particular need to preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to . . . a font of tort law." <u>Cty. of Sacramento v. Lewis</u>, 523 U.S. 833, 846, 474 n.8 (1998). Absent allegations of additional egregious conduct, Rocheleau's withholding of exculpatory evidence and failure to comply with state court orders do not do not "fall within the narrow range of 'conscious-shocking' conduct that has been held to violate the right to substantive due process." <u>Cusick</u>, 145 F. App'x at 703.

H.    <u>State Law Claims</u>

Finally, Siddiqui brings various state law claims against Rocheleau, including for unreasonable search and seizure and for intentional infliction of emotional distress. Am. Compl. at ¶¶ 26, 44. However, having dismissed all of Siddiqui's federal law claims, the court will not reach the merits of Siddiqui's state law claims because Siddiqui has not

carried his burden of proving that his suit satisfies the amount in controversy requirement for diversity jurisdiction.[6]  Although Siddiqui asserts that the court has diversity jurisdiction and Rocheleau has not this assertion, the court is obligated, <u>sua sponte</u>, "to consider whether the requirements of the diversity statute were satisfied in this case," both because "a challenge to subject matter jurisdiction cannot be waived and because where jurisdiction is lacking, dismissal is mandatory." <u>Mehlenbacher v. Akzo Nobel Salt, Inc.</u>, 216 F.3d 291, 295 (2d Cir. 2000) (internal quotation marks and alterations omitted); <u>see also id.</u> at 295–298 (addressing, <u>sua sponte</u>, whether plaintiff's claim satisfied the amount in controversy requirement for diversity jurisdiction).

Pursuant to section 1332 of title 28 of the United States Code, a district court has diversity jurisdiction when (1) there is diversity of citizenship between the parties, and (2) "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs."  The Second Circuit has noted that the "party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."  <u>Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago</u>, 93 F.3d 1064, 1070 (2d Cir. 1996).  While "[i]t is well settled that the sum claimed by the plaintiff controls if the claim is apparently made in <u>good faith</u>," <u>id.</u> (emphasis in original), "[a] plaintiff must [ ] show that the amount in controversy is non-speculative in order to satisfy the [diversity

---

[6] The court also declines to exercise its supplemental jurisdiction over Siddiqui's state law claims. Where, as here, "the district court has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over any remaining causes of action.  28 U.S.C. § 1367(c)(3).  Indeed, "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  <u>DiLaura v. Power Auth. of State of N.Y.</u>, 982 F.2d 73, 80 (2d Cir. 1992).

jurisdiction] statute," <u>Herbert v. Devito</u>, No. 18-CV-5287 (AMD), 2018 WL 4845737, at *3 (E.D.N.Y. Oct. 4, 2018). Accordingly, district courts in this Circuit have routinely found jurisdictional defects in complaints that merely allege that the claim exceeds the statutory jurisdictional amount, without alleging a factual basis to support a reasonable probability that the requirement has been met. <u>See</u>, <u>e.g.</u>, <u>Baltazar v. Earth Ctr. of Maanu, Inc.</u>, No. 14-CV-3543 ENV LB, 2014 WL 3887717, at *2 (E.D.N.Y. July 11, 2014). However, even where the court concludes that the plaintiff has not pled a reasonable probability of satisfying the amount in controversy requirement, "the court must afford the plaintiff an appropriate and reasonable opportunity to show good faith in believing that a recovery in excess of the jurisdictional amount is reasonably possible." <u>Chase Manhattan Bank</u>, 93 F.3d at 1070 (2d Cir. 1996) (internal quotation marks and alterations omitted).

In this case, Siddiqui alleges that "[t]he amount in dispute, exclusive of interest and costs, is greater than seventy-five thousand dollars ($75,000)." Am. Compl. at ¶ 1. However, the factual allegations underlying this claim of jurisdiction do not provide a basis for inferring to a reasonable probability that Siddiqui's suit satisfies the amount in controversy requirement. Siddiqui merely alleges that he has suffered (1) "significant damage to his reputation," <u>id.</u> at ¶ 33; (2) "substantial loss of income as a result of his inability to return to the United States to complete his graduate school education at Northwestern University," <u>id.</u>; and (3) "severe emotional distress, including significant exacerbation of his Major Depression and Chronic Insomnia," <u>id.</u> at ¶ 43. To infer from these allegations that Siddiqui's suit exceeded $75,000 in value would be speculative.

Accordingly, Siddiqui has not met his burden of proving to a reasonable probability that the amount in controversy exceeds the jurisdictional limit.

The court therefore concludes that it lacks diversity jurisdiction over the case at this time. In accordance with the Second Circuit's directions, the court grants Siddiqui leave to amend his Amended Complaint to allege that recovery in excess of $75,000 is reasonably possible, as well as to replead, if he can, his right to travel claim and his unreasonable search and seizure claim.

## V. CONCLUSION

For the foregoing reasons, Rocheleau's Motion to Dismiss (Doc. No. 9) is **GRANTED**, and Siddiqui's Amended Complaint is dismissed without prejudice. Siddiqui is permitted to replead his right to travel claim, his Fourth Amendment search and seizure claim, and the existence of diversity jurisdiction over his state law claims. Any amended complaint shall be filed on or before **December 31, 2018**. If no amended complaint has been filed by that date, the clerk is directed to close the case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 10th day of December, 2018.

/s/ Janet C. Hall _____
Janet C. Hall
United States District Judge